```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                     HATTIESBURG DIVISION


WINFORD L. ADCOCK                                       PLAINTIFF

VS.                         CIVIL ACTION NO. 2:04-cv-284(Br)(Su)

HALLIBURTON ENERGY SERVICES, INC.                       DEFENDANT
```

MEMORANDUM OPINION AND ORDER

This cause is before the Court on the plaintiff Winford L. Adcock ("Adcock")'s Motion to Vacate Arbitrator's Award **(docket entry 11)**, and on the plaintiff's Motion to Stay Confirmation of Arbitration Award **(docket entry 17)**. Also pending, as part of the defendant Halliburton Energy Services, Inc. ("Halliburton")'s response **(docket entry 15)** to the motion to vacate, is the defendant's motion to affirm the award. Having carefully considered the motions and responses, the memoranda and the applicable law, and being fully advised in the premises, the Court finds as follows:

This is an employment discrimination action in which plaintiff Adcock alleges that he was terminated in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 <u>et</u> <u>seq</u>. ("ADEA"), and that he was subject to intentional and/or negligent infliction of emotional distress. On October 28, 2004, the Court entered an Opinion in which it found that the plaintiff was contractually obligated to arbitrate his employment dispute, and entered an Order compelling Adcock to arbitrate all of his claims pursuant to the

Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"). This cause was dismissed without prejudice to the right of any party to reopen the docket. Arbitration is completed, the arbitrator having entered an award in favor of the defendant denying all of the plaintiff's claims. The arbitrator found no evidence of discrimination, and further found the plaintiff's intentional and/or negligent infliction of emotional distress claim to be without merit. The case is presently before the Court on the plaintiff's motion to vacate the arbitration award, and on the defendant's motion for confirmation of the arbitration award.

Before addressing the merits of the plaintiff's motion for vacatur, the Court notes the defendant's objection that the motion is untimely. Section 12 of the FAA provides: "Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. Adcock's motion was served[1] three months and six days after the arbitrator's award was issued, but exactly three months after the arbitrator's award was received by Adcock.

The Court is thus faced with the meaning of the phrase "filed or delivered" in the statute. If "filed or delivered" means only the date the arbitrator's award was issued, the motion is untimely.

---

[1] Pursuant to Fed.R.Civ.P. 5(b)(2)(D), notice of electronic filing that is automatically generated by the Court's electronic filing system constitutes service of the document.

If, on the other hand, the phrase also means the date the arbitrator's award was received by the plaintiff, the motion was timely.  The Fifth Circuit has not addressed this question.  The D.C. Circuit, in Sargent v. Paine Webber Jackson & Curtis, Inc., 882 F.2d 529 (D.C. Cir. 1989), held that a motion to vacate an arbitrator's award was timely when it was served within three months of the plaintiffs' receipt of the arbitrator's award.  Id. at 531.  Similarly, in Smith v. Shell Chemical Co., 333 F.Supp.2d 579 (M.D. La. 2004), the district court for the Middle District of Louisiana found that a plaintiff had three months from the date he received the arbitration award to serve his motion to vacate.  Id. at 579; accord, Basic Capital Management, Inc. v. International Depository Trust Corporation, 2001 WL 34546322 (N.D. Tex. Oct. 30, 2001); Nordahl Development Corp. v. Salomon smith Barney, 309 F.Supp.2d 1257 (D. Or. 2004); Possehl v. Shanghai Hia Xing Shipping, 2001 WL 214234 (S.D. N.Y. 2001); but see Yaday v. New York Stock Exchange, Inc., 1992 WL 197409 (S.D. N.Y. Aug. 4, 1992)(interpreting phrase "filed or delivered" to mean date award was issued); Colavito v. Hockmeyer Equipment Corp., 605 F.Supp. 1482, 1487 (S.D. N.Y. 1985)(interpreting phrase to mean the date designated on face of award); Foster v. Turley, 808 F.2d 38, 41 (10th Cir. 1986)(interpreting phrase to mean the date award was actually docketed).

This Court is persuaded that Sargent presents a more reasoned

definition of "filed or delivered" by including the date the arbitrator's award was <u>received</u> by the plaintiff.  However, since the Fifth Circuit has not ruled on this issue, the Court finds the more prudent course is to first determine if the plaintiff has stated a viable claim for vacatur of the award.

Review of an arbitration award by a district court is "extremely narrow." <u>Prescott v. Northlake Christian School</u>, 369 F.3d 491, 494 (5th Cir. 2004).  This is based on arbitration's method of dispute resolution, which is decidedly different than that of ordinary litigation.  "The arbitration process is a speedy and informal alternative to litigation, and, by its very nature, is intended to resolve disputes without confinement to many of the procedural and evidentiary strictures that protect the integrity of formal trials." <u>Prestige Ford v. Ford Dealer Computer Servs., Inc.</u>, 324 F.3d 391, 394 (citing <u>Forsythe Int'l, S.A. v. Gibbs Oil Co. of Texas</u>, 915 F.2d 1017, 1022 (5th Cir. 1990)).  "Parties to voluntary arbitration may not superimpose rigorous procedural limitations on the very process designed to avoid such limitations." <u>Id</u>. (Citing <u>Forsythe Int'l</u>, 915 F.3d at 1022).  As the Fifth Circuit expressed in <u>Prestige Ford</u>:

> Submission of disputes to arbitration always risks an accumulation of procedural and evidentiary shortcuts that would properly frustrate counsel in a formal trial; but because the advantages of arbitration are speed and informality, the arbitrator should be expected to act affirmatively to simplify and expedite the proceedings before him.  <u>Id</u>. [<u>Forsythe Int'l</u>, 915 F.3d at 1022].  Thus, whatever indignation a reviewing court may

>     experience in examining the record, it must resist the
>     temptation to condemn imperfect proceedings without a
>     sound statutory basis for doing so.  Id.

Prestige Ford, 324 F.3d at 394.

The statutory basis for vacatur of an arbitration award, found in 9 U.S.C. § 10(a), provides that a district court has the authority to vacate an arbitration award if: (1) the award was procured by corruption, fraud, or undue means; (2) there is evidence of partiality or corruption among the arbitrators; (3) the arbitrators were guilty of misconduct which prejudiced the rights of one of the parties; or (4) the arbitrators exceeded their powers.  Forsythe Int'l, 915 F.3d at 1022 (citing 9 U.S.C. § 10).

The Fifth Circuit, following the Supreme Court's lead, also recognizes some circumstances in which a court may refuse to enforce an arbitration award that is contrary to public policy. See Gulf Coast Industrial Workers Union v. Exxon Co., U.S.A., 991 F.2d 244, 248-49 (5th Cir. 1993).  However, the Supreme Court has explained that a court's refusal to enforce an award that is contrary to public policy is little more than "a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy."  United Paperworkers Intern. Union v. Misco, Inc., 484 U.S. 29, 42 (1987).  Further, "courts are forbidden to use imprecise notions of public policy which would allow ill-defined considerations to negate the rule favoring judicial deference."

Exxon, 991 F.2d at 249 (citing Misco, 484 U.S. at 43).  "At the very least, an alleged public policy must be properly framed under the general approach set out in W.R. Grace [& Co. v. Local Union 759, 461 U.S. 757 (1983)], and the violation of such a policy must be clearly shown if an award is not to be enforced."  Misco, 484 U.S. at 43.

The Fifth Circuit, again taking the Supreme Court's lead, has also adopted "manifest disregard of the law" as a non-statutory ground for vacating an arbitration award.  Prestige Ford, 324 F.3d at 395.  This is the ground relied on by the plaintiff in his motion, which alleges that the arbitrator acted "in clear disregard of the law" in failing to find "direct evidence of discriminatory animus" regarding the plaintiff's age discrimination claim.  Motion to Vacate Arbitrator's Award, ¶ IV.  Review under the judicially-created "manifest disregard" standard is also extremely narrow.  As the Second Circuit has noted:

> "Manifest disregard of the law" by arbitrators is a judicially-created ground for vacating their arbitration award, which was introduced by the Supreme Court in Wilko v. Swan, 346 U.S. 427, 436-37, 74 S.Ct. 182, 187-88, 98 L.Ed. 168 (1953).  It is not to be found in the federal arbitration law.  9 U.S.C. § 10.  Although the bounds of this ground have never been defined, it clearly means more than error or misunderstanding with respect to the law.  The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator.  Moreover, the term "disregard" implies that the arbitrator appreciates the existence of a clearly governing principle but decides to ignore or pay no attention to it.  To adopt a less strict standard of judicial review would be to undermine our well established deference to

>     arbitration as a favored method of settling disputes when
>     agreed to by the parties. Judicial inquiry under the
>     "manifest disregard" standard is therefore extremely
>     limited. The governing law alleged to have been ignored
>     by the arbitrators must be well defined, explicit, and
>     clearly applicable.

Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Bobker, 808 F.2d 930-34 (2nd Cir. 1986)(internal citations omitted)(quoted in Prestige Ford, 324 F.3d at 395). Furthermore, "[e]ven where [the] arbitrator has acted contrary to applicable law, the award should be upheld unless it would result in a significant injustice." Butler v. Munsch Hardt Kope & Harr, P.C., 2004 WL 248964 (N.D. Tex. Nov. 1, 2004)(citing Williams v. Cigna Fin. Advisors, Inc., 197 F.3d 752, 762 (5th Cir. 1999)). Thus, in order to achieve vacatur of the arbitration award based on "manifest disregard of the law," Adcock must prove: (1) that the arbitrator manifestly disregarded the law as to his claim of age discrimination, and (2) that the award will result in a significant injustice.

The plaintiff, in his motion to vacate, claims that the arbitrator erroneously found that he "presented no competent, relevant or material evidence to establish his claim of age discrimination against Respondent." Motion to Vacate, ¶ II (quoting Award of Arbitrator, ¶ IV(A)). The plaintiff argues that "a witness for the Defendant, one who admittedly played a role in Mr. Adcock's termination, made the comment that Mr. Adcock was 'too old' to perform certain functions, this while testifying on cross examination during the arbitration hearing." Motion to Vacate, ¶

III.  Adcock claims that the witness's remarks at the hearing were "admissions made in the course of a hearing" and constituted "direct evidence" of discrimination.  Motion to Vacate, ¶ VI.

At the hearing, plaintiff's counsel questioned Lou Bladsacker, a former supervisor of the plaintiff, as follows:

> Q.  Do you ever recall making any age related statements to Mr. Adcock?
>
> A.  Age related statements?
>
> Q.  Yeah.  Referencing his age.
>
> A.  I may have.  I mean, we all talked about – we're not exactly young children anymore.
>
> Q.  Okay.  I'm going to show you Claimant's Exhibit 25.  So, that would be – have you seen that before?
>
> A.  What's the significance of this?
>
> Q.  You made age – you recognized Mr. Adcock's age and made that statements that y'all were old farts.
>
> A.  Ms. Bennett –
>
> MR. ZURIK [defendant's attorney]: I'm going to object to the relevancy.  It's back in '99.  It's three years –
>
> THE ARBITRATOR: Overruled.
>
> MR. ZURIK: Okay
>
> Q (By Ms. Bennett) You were –
>
> A.  Ms. Bennett, if you was to look at this, apparently, he had a confrontation with one of the other employees or other supervisors.  You can look at this.  And I didn't call him this singular.  It was a plural.  And I was just trying to ease the time.  This could be related to experience.  It could be related to a lot of things other than age.  And to tell you the truth, I don't remember saying this.  If it wasn't for this, I would have to tell you I don't remember again. ...

Transcript of Hearing, pp. 204-05.

>Q (By Ms. Bennett) Are there jobs out there which you believe Mr. Adcock would be qualified for if he were to return to work?
>
>A.  Mr. [sic] Bennett, that a very unfair question.
>
>Q.  Well, you –
>
>A.  I haven't worked with Mr. Adcock in three years.
>
>Q.  Well, I –
>
>A.  I don't know his capabilities right now.  Can he – maybe he got too old to drive these units, to get up and down on these units.  I can't answer that.
>
>Q.  Too old?
>
>A.  I didn't say that.
>
>Q.  You did say that, I'm sorry.
>
>A.  All right.  Maybe he is too old.  I know I'm too old to do it.
>
>Q.  But you were able to tell Mr. Zurik that there are plenty of vacancies in the Company, is that right?
>
>A.  Just check Career Central, Ms. Bennett.
>
>Q.  Would you recommend that Mr. Adcock be hired for a job if it was brought to you and he was qualified?
>
>MS. BENNETT[sic][MR. ZURIK?]: Objection.  I'm not sure the relevance, and it's speculative.
>
>THE ARBITRATOR: Overruled.  You can answer it if you know.
>
>A.  I can only relate to Mr. Adcock's – my honest opinion is that, when he was working, he did a good job. ...

Transcript of Hearing, pp. 258-59.

>In his Award of Arbitrator, the arbitrator included among his

9

findings: (1) Adcock had not presented any evidence that his replacement was younger than he was; (2) Halliburton had presented a legitimate nondiscriminatory reason for the plaintiff's termination – that he was being replaced by an Algerian National pursuant to a nationalization plan in effect between Halliburton and Algeria; and (3) Adcock had failed to present any evidence that Halliburton's reason was pretextual. Award of Arbitrator, ¶ IV(A). The arbitrator also made the following finding:

> Claimant suggests that Mr. Bladsacker's response to a question from Claimant's counsel regarding Claimant's physical capabilities which stated that, "Claimant may be too old to drive the units or to get up and down on the units [ ]..." is evidence of age discrimination. This proof fails because there is no evidence that Bladsacker was the decision-maker who eliminated Claimant's position, and a statement made three years after the Claimant was terminated is too remote in time to be relevant evidence of discrimination. In order for a "stray remark" made in the workplace to constitute sufficient evidence of discrimination, it must be (1) related to the protected class; (2) proximate in time to the termination; (3) made by a person with authority over the employment decision; and (4) related to the employment decision. <u>Wallace v. Methodist Hosp. System</u>, 271 F.3d 212 (5th Cir. 2001).

Award of Arbitrator, ¶ IV(A).

It is clear that the arbitrator correctly applied the law to the facts of this case. Remarks remote in time are alone insufficient to establish age discrimination. See <u>Atkin v. Lincoln Property Co.</u>, 991 F.2d 268, 272 (5th Cir. 1993)(evidence that employer told employee that the employee was "getting up there in years" and that it would be a good idea for him to retire is,

without more, insufficient to allow a jury to find age discrimination); Waggoner v. City of Garland, 987 F.2d 1160, 1166 (5th Cir. 1993)("mere stray remarks, with nothing more, are insufficient to establish a claim of age discrimination").

The plaintiff's employment was terminated on December 26, 2002. Bladsacker's remark that he and the plaintiff were "old farts" occurred in 1999 and was not proximate in time to the termination. Moreover, there is no evidence that the remark was related to the employment decision at issue, which is whether Adcock's termination on December 26, 2002, was the result of age discrimination by Halliburton. As for Bladsacker's testimony at the arbitration hearing on October 27, 2005, that "maybe [the plaintiff] got too old to drive these units" and "maybe he is too old," they too were not proximate in time to the termination. Nor is there any evidence relating these remarks to the employment decision at issue. Bladsacker was asked by plaintiff's counsel, "Are there jobs out there which you believe Mr. Adcock would be qualified for if he were to return to work?" This question was not phrased to elicit an answer concerning the employment decision at issue, and Bladsacker did not give one.

Nor can Bladsacker's statements be deemed an admission by a party-opponent, which is defined as, inter alia, a statement

> offered against a party and is ... (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of

>      the agency or employment, made during the existence of
>      the relationship ...

Fed.R.Evi. 801(d)(2). In employment discrimination cases, "the declarant must be involved in the decision making process affecting the employment action involved," through, for example, serving in management or some other personnel position. See <u>Aliotta v. Nat'l R.R. Passenger Corp.</u>, 315 F.3d 756, 762 (7th Cir. 2003). The plaintiff does not show that Bladsacker was authorized by Halliburton to comment on the type of question posed by Adcock's attorney, nor that it was within the scope of his employment.

In addition, neither the question nor the answer speak to the employment decision at issue in this case. The question "Are there jobs out there which you believe Mr. Adcock would be qualified for if he were to return to work?" was a hypothetical question which called for speculation. As the witness testified, "I haven't worked with Mr. Adcock in three years. ... I don't know his capabilities right now. ... I can't answer that." Bladsacker's so-called admissions that "maybe [Adcock] got to old to drive these units" and "maybe he is too old" are merely equivocal responses to a hypothetical question. Such speculative statements in response to a hypothetical cannot be bootstrapped into a vicarious admission.

For the above reasons, the Court finds no obvious error by the arbitrator and no manifest disregard of the law. The plaintiff has failed to state a claim for vacatur of the arbitration award, and

his motion to vacate shall be denied.  Accordingly,

IT IS HEREBY ORDERED that the plaintiff Winford L. Adcock's Motion to Vacate Arbitrator's Award **(docket entry 11)** is DENIED;

FURTHER ORDERED that the plaintiff's Motion to Stay Confirmation of Arbitration Award **(docket entry 17)**. Is DENIED;

FURTHER ORDERED that the defendant Halliburton Energy Services, Inc.'s Motion to Affirm the Arbitration Award is GRANTED.

Counsel for the defendant shall submit an appropriate proposed order affirming the award and dismissing this action with prejudice.

SO ORDERED, this the 13th day of February, 2007.

　　　　　　　　　　　　　　　　　　S/DAVID BRAMLETTE
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE